**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RAY SALAZAR,** | § | |
| **TDCJ No. 02211380,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-20-CV-764-LY** |
| | § | |
| **BOBBY LUMPKIN,[1]  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court
pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United
States District Court for the Western District of Texas, Local Rules for the Assignment of Duties
to United States Magistrates Judges.

Before the Court are *pro se* Petitioner Ray Salazar's Petition for Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 16), and Petitioner's
Reply (ECF No. 25). Petitioner also has two motions pending: a Motion to Alter or Amend
Judgment and Motion to Vacate Referral to Magistrate and Preside. (ECF Nos. 27, 29.) Having

---

[1]  The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director
of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a
party. FED. R. CIV. P. 25(d).

1

reviewed the record and pleadings submitted by both parties, the undersigned concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). The Court should also deny Petitioner's two pending motions.

## I. Background

In October 2016, Petitioner was charged by indictment with two counts of sexual assault habitual and one count of unlawful restraint habitual. The indictment also included two enhancement paragraphs listing Petitioner's prior felony convictions for burglary of a habitation with intent to commit assault and burglary of a building. (ECF No. 17-19 at 6-8.)

On July 16, 2018, and pursuant to a plea agreement, Petitioner pled guilty to one count of sexual assault habitual and was sentenced to thirty years imprisonment. *State v. Salazar*, No. D-1-DC-16-900145 (299th Dist. Ct., Travis Cnty., Tex. July 16, 2018). (ECF No. 17-19 at 9-10, 13-17.) Pursuant to the plea agreement, Petitioner agreed he had no right to appeal and waived his right to appeal. (*Id.* at 88.) On July 25, 2018, Petitioner filed a motion for a new trial, arguing his plea was not made freely and voluntarily. The trial court denied the motion. (*Id.* at 90-93.) Petitioner did not file a direct appeal.

On May 22, 2019, Petitioner filed a state habeas corpus application, and then filed a supplemental application in August 2019, which list the following seven grounds of relief:

1. Petitioner's trial counsel provided ineffective assistance of counsel when they

   a. failed to conduct an adequate investigation of Petitioner's mental health history or offer evidence of mental health issues as mitigating evidence;

   b. failed to file a motion requesting court-appointed assistance of a mental health expert to assist the defense and failure to file notice of intent to offer evidence regarding the insanity defense prior to trial;

2

c.   abandoned Petitioner during the thirty day period for filing a notice of appeal in order to challenge jurisdictional defects and the voluntariness of the plea;

d.   did not assist Petitioner during the period for filing and presenting a motion for new trial after sentencing; and

e.   failed to investigate and timely discover exculpatory evidence of DNA test results as potentially mitigating evidence.

2.   The trial court abused its discretion and violated his right to due process by denying Petitioner a hearing on a motion for new trial and by failing to rule on Petitioner's request for a hearing.

3.   The trial court illegally entered a void sentence and judgment when it failed to make affirmative findings for the two enhancement paragraphs which supported Petitioner's conviction as a habitual offender.

(ECF No. 17-19 at 19-37, 131-36.) On July 8, 2020, the Texas Court of Criminal Appeals (TCCA) denied Petitioner's application without written order on findings of trial court without hearing and on the court's independent review of the record. *Ex parte Salazar*, No. WR-68,072-03. (ECF No. 17-11.)

Petitioner filed his federal habeas petition on July 20, 2020. In it, he raises the same claims that were raised and rejected in his state writ application. (ECF No. 1.) On October 30, 2020, Respondent filed a response, to which Petitioner replied on January 29, 2021. (ECF Nos. 16, 25.) Petitioner has also filed a Motion to Alter or Amend Judgment and a Motion to Vacate Referral to Magistrate and Preside. (ECF Nos. 27, 29.)

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Petitioner's Guilty Plea

It is axiomatic that a guilty plea is valid only if entered into voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "'real notice of the true nature of the charge against him.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *United States v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012).

The voluntariness of Petitioner's plea is demonstrated by his signature on the plea agreement, which is entitled "Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulation & Judicial Confession." (ECF No. 17-19 at 13-18.) The agreement shows that Petitioner was represented by counsel and he checked and initialed the statement "HABITUAL OFFENDER: a term of life or any term of not more than 99 years or less than 25 years in the Texas Department of Criminal Justice." The agreement also includes the following statements:

> I voluntarily enter my plea of GUILTY to the abovementioned offense. I am pleading guilty (or *nolo contendere*) because I am guilty and for no other reason. My plea is entered freely and voluntarily, and without any coercion duress or promise of benefit other than that stated in the plea bargain agreement. I request the Court to consider probating any sentence imposed, and as to the issue of punishment agree that the pre-sentence investigation report of the Community Supervision and Corrections Department may be considered by the Court.

. . . .

> I can read and write the English language; I have read this entire document and
> discussed it fully with my attorney; I understand this document completely,
> including the Court's admonishments, and I am aware of the consequences of my
> plea. My attorney has discussed with me the law and facts applicable to this case,
> and I am satisfied that I have been effectively represented. I understand if an appeal
> is made, written Notice of Appeal must be filed within 30 days of the sentencing
> date.

(*Id.* at 16.) Petitioner initialed the first statement and then signed his name underneath the second

one. *Id*. Erin Shinn, on of Petitioner's trial attorneys, signed the plea agreement, affirming she had

"fully consulted with the defendant and have carefully reviewed with him/her this entire document.

I believe s/he is mentally competent, understands the admonishments, is aware of the consequences

of the plea, and is freely, voluntarily, knowingly and intelligently entering his/her plea of guilty,

waiver, stipulation and judicial confession." *Id*. at 17. Finally, the trial judge signed the document

underneath the paragraph which states

> The Court hereby finds that (1) the Defendant was sane when the alleged offense
> was committed, is mentally competent, is represented by competent counsel,
> understands the nature of the charges against him/her, and has been warned of the
> consequences of a plea of guilty or *nolo contendere*, including the minimum and
> maximum punishment provided by law; (2) the attorney for the Defendant and the
> State consent to and approve the waiver of trial by jury and agree to stipulate the
> evidence and judicial confession in this case; and (3) the Defendant understands the
> consequences of his plea, and the Defendant's plea of guilty, statements, waivers,
> consent, stipulations, and judicial confession were freely, voluntarily, knowingly
> and intelligently made. The Court hereby approves the waiver of a jury trial, all
> other waivers, the consent to stipulate evidence, and judicial confession.

*Id*.

Petitioner's signature on the plea document is prima facie proof of the validity of the plea

agreement, *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), and is entitled to "great evidentiary

weight," *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752

F.2d 1079, 1081 (5th Cir. 1985)). By entering a knowing, intelligent, and voluntary guilty plea, a

defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, including claims of ineffective assistance of counsel (IAC) unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea).

As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). In his federal and state petitions, Petitioner claims his trial counsel provided ineffective assistance when they (1) failed to investigate his mental health issues; (2) failed to request a court-appointed mental health expert to aid in Petitioner's defense and potentially seek the insanity defense, which rendered Petitioner's guilty plea involuntary and unknowing; (3) abandoned Petitioner during the time period for filing an appeal to challenge jurisdiction and the guilty plea; (4) filed a motion for a new trial based on Petitioner's plea being involuntary but did not file a motion for a hearing; and (5) failed to investigate the potentially exculpatory DNA evidence. Petitioner also argues that the trial court erred when it denied his motion for a new trial, and that his conviction and sentence are illegal and void because the trial court failed to make affirmative findings regarding his prior felony convictions.

In its response, the State argues Petitioner's voluntary and intelligent guilty plea waives two of his IAC claims (numerated (2) and (5) in the preceding paragraph) but also addresses the merits of these claims. (ECF No. 16 at 11-18.) The Court construes Petitioner's IAC claims as attacking the voluntariness of his guilty plea, and as such, addresses the merits of these claims to that extent. *See Hill*, 474 U.S. at 56 (the court considers IAC claims only to the extent they

7

implicate the voluntariness of a guilty plea); *Smith*, 711 F.2d at 682 (valid guilty plea waives all non-jurisdictional defects).

2.  Ineffective Assistance of Counsel (IAC)

Five of Petitioner's claims before the Court are based on allegations that his trial attorneys provided ineffective assistance of counsel. The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. To establish counsel's performance as deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688–89. In the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citations omitted). This assessment depends in part on "a prediction of what the outcome of a trial might have been." *Id*.

a.  *Mental Competency (claims 1 and 2)*

In Petitioner's first two IAC claims, he alleges his trial counsel—Erin Shinn and Jason C. Jarvis—provided ineffective assistance when they failed to investigate his mental health issues, failed to offer evidence of his mental health issues as mitigating evidence, failed to request a mental-health expert, and failed to file a notice of intent to offer evidence of insanity prior to trial. His lead trial attorney, Erin Shinn, responded to his allegations in her state habeas affidavit:

While acting in a second chair capacity I reviewed discovery, met with an investigator, discussed trial strategy with lead counsel, and met with Mr. Salazar on a date close to trial. On June 11, 2018 voir dire was conducted and a mistrial occurred due to not enough jurors being left after strikes to create a full felony jury. In order to prevent delay at Mr. Salazar's request, the trial was moved to the next available setting and I was made lead counsel. Jason Jarvis was appointed shortly thereafter as second chair. During the next month, I prepped for the jury trial as lead counsel, meeting several additional times with Mr. Salazar, more extensively reviewing· discovery, conducting a meeting with the previously hired DNA expert, issuing additional subpoenas for supporting cell phone data, meeting with the investigator, contacting potential sentencing witnesses, visiting the crime scene, and interviewing Victoria Gonzales, Mr. Salazar's mother, as both a fact and sentencing witness. . . .

Part of my discovery review included his jail records, [which] made references to mental health history. He had not previously brought up his mental health issues until I asked about them in a meeting on July 12, 2019. Mr. Salazar did not reveal anything that made me explore the defense of insanity, nor did he ask for that defense to be investigated. Co-counsel and I planned to utilize the mental health information in sentencing and discussed and presented a motion for continuance to the Judge [on] July 13, 2019 off the record with the State present for appointment of a mitigation expert for the purposes of testifying about mental health diagnoses (among other grounds). At the time [the Judge] was not inclined to grant it due to the length of time of Mr. Salazar's incarceration but said we could re-urge the morning of trial if necessary.

We continued preparing for trial but were still planning on presenting the Motion for Continuance formally on the record July 16, 2019 before voir dire was scheduled to be conducted at the second jury trial setting. I met with Mr. Salazar July 15 to review trial strategy and present to him a trial letter memorializing the same. We realized that there was not a current plea bargain offer and Mr. Salazar expressed a desire for me to elicit one before the trial was to start. The previous offers had all been removed at the last jury trial setting.

The morning of trial I spoke with the State about a potential plea bargain. The negotiations involved nearly three hours of discussion with the prosecutors, my client, co-counsel and myself, and the Judge. Mr. Jarvis and I were firm that Mr. Salazar was looking at unfavorable evidence but that it was his choice to proceed with trial in the event that our continuance was denied. He ultimately authorized us to counter-offer a 30 year sentence on one count of the indictment. Mr. Salazar was very emotional during the negotiation process but indicated repeatedly that the plea was the decision he wanted to move forward with. We went over the plea papers and conducted the plea hearing. Later that evening, I received a call from Mr. Salazar that he had changed his mind and wanted to go through with the trial as originally planned. I told him I would come meet with him to discuss his options. I

first met with an attorney for the Capital Area Private Defender Service, Richard Segura, to make sure I was following best practices. With his help I drafted a post-plea letter to articulate what options Mr. Salazar had to get a new trial. Mr. Salazar did not ask me to seek an appeal, only a new trial. After meeting with him, I had him draft an affidavit and filed a motion for new trial, which was denied. I then withdrew as trial counsel as the purpose for my court appointment had been fulfilled.

. . . .

My initial interviews with appointed clients include questions about mental health history and treatment. Because l was first appointed in a second chair capacity, my full interview with him as first chair was not conducted until after I had already reviewed his jail records. I did interview Mr. Salazar about it, including formal treatment he may have gotten. I also spoke to his mother about it. Because no expert had interviewed him regarding his mental health history, I discussed with the Judge the possibility of getting one appointed for mitigation in punishment and put the request in writing in a continuance. Mr. Salazar took a plea bargain before voir dire was set to begin and so the punishment phase of the trial never occurred, nor did the Court hear my request for continuance on the record.

. . . .

After learning about Mr. Salazar's potential mental health issues close to the second jury trial setting, I discussed the possibility of an appointed mitigation expert with the Judge as the basis for a continuance. At no point did I suspect that Mr. Salazar was incompetent to stand trial nor did I request an evaluation for such purpose. The Judge informally told me she was not inclined to allow a continuance on such grounds but that I could file it and take it up the morning of trial formally. Mr. Salazar took a plea bargain before motions were heard the morning of the trial. He never articulated in any conversation I had with him grounds for me to pursue an insanity defense in good faith. His mental health history and narrative of the offense did not indicate that was insane at the time of the incident.

(ECF No. 17-19 at 113-16.) Upon review of Petitioner's state habeas application and Ms. Shinn's affidavit, the state habeas court—which was also the trial court—made the following findings:

26. The Court finds the affidavits of Erin Shinn and Jason Jarvis credible.

. . . .

28. Erin Shinn and Jason Jarvis met with Applicant on July 12, 2018. At this meeting, Applicant discussed his mental health history with his attorneys for the first time.

29. Erin Shinn had learned of Applicant's mental health issues through discovery of his jail records, not from Applicant.

30. On July 13, 2018, Erin Shinn prepared a motion for continuance, citing a request for an appointment of a mitigation expert for the purposes of testifying about, among other things, Applicant's mental health diagnoses.

31. This motion was not formally urged on the record, but it was discussed between Erin Shinn, Jason Jarvis, counsel for the State, and this Court on July 13, 2018.

. . . .

35. Applicant's counsel intended to urge the motion for continuance and pursue the appointment of a mitigation expert for punishment, but those objectives were abandoned by Applicant with his decision to plead guilty and receive a punishment of thirty years.

36. In all of their meetings, Applicant did not reveal anything that caused Erin Shinn to believe a credible insanity defense might apply.

37. Applicant did not request at any time that the insanity defense be investigated.

38. Applicant has failed to demonstrate any credible facts that suggest his counsel had a duty to investigate the insanity defense.

39. Applicant has failed to demonstrate that any further investigation into his mental health history would have had any reasonable probability of a different outcome had his counsel admitted evidence of mental health at punishment.

40. Applicant has failed to show that his attorney was ineffective for failing to conduct an adequate investigation in Applicant's mental health history.

41. Applicant waived a punishment hearing, at which time counsel would have had the opportunity to admit evidence favorable to mitigation of punishment. Therefore his claim that counsel failed to offer mitigating evidence at punishment is without merit.

. . . .

56. Applicant has failed to demonstrate that his counsel rendered ineffective assistance in failing to seek appointment of a mental health expert or in failing to file notice to pursue an insanity defense.

(*Id.* at 224-30.)

11

Petitioner argues his trial counsel was deficient for failing to investigate his mental health issues, seek the appointment of a mitigation expert for mitigation purposes, and file notice of the insanity defense. The state habeas court found that Ms. Shinn did informally pursue a continuance to appoint a mental health expert for mitigation purposes, but that this strategy was abandoned when Petitioner accepted the plea offer. Ms. Shinn also attested, and the habeas court found credible, that she was aware of Petitioner's history of mental health issues prior to him accepting the plea offer, and that Petitioner did not present a credible reason for her to investigate the insanity defense. Where, as here, the state habeas court and trial court are one in the same, the presumption of correctness afforded the state habeas court's factual determinations is especially strong. *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted)

Again, the Court considers these allegations only to the extent Petitioner is arguing his mental health issues made his guilty plea either unintelligent or involuntary. As previously discussed, the plea agreement is prima facie evidence of Petitioner's awareness of the "'relevant circumstances and likely consequences'" of his plea. *Bradshaw*, 545 U.S. at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Petitioner's plea agreement stated he understood the terms of the plea agreement, his attorney has explained the legal effects of the agreement, and he was not coerced or misled into making the plea. Ms. Shinn attested that, the evening after accepting the plea bargain, Petitioner changed his mind and wanted to proceed to trial. Although Petitioner appears to regret accepting the State's plea bargain, he is nonetheless unable to point to anything in the record suggesting his trial counsels' performance as it relates to his mental health issues rendered his guilty plea involuntary or unintelligent. Petitioner's conclusory allegations are not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of

12

ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). The state habeas court's application of *Strickland* was not unreasonable, and these claims should be denied.

### b.  Abandonment after guilty plea (claim 3)

In Petitioner's third claim, he argues that trial counsel provided ineffective assistance when they abandoned him in the thirty-day period following his guilty plea, and then advised him he could not appeal the trial court's denial of Petitioner's motion for a new trial and did not have the right to appeal. Ms. Shinn responded to this claim as follows:

> I was appointed as trial counsel, not appellate counsel and withdrew after I requested a new trial for Mr. Salazar. l did advise him in writing that he waived all appellate rights, but he did not request that I pursue an appeal in his discussions with me, only a desire to me to file for the new trial. There were not contested pre-trial motions ruled on to appeal nor any competency issues that presented during my representation of Mr. Salazar. He also did not request that appellate counsel be appointed to him from the Capital Area Private Defender Service to my knowledge. I have assisted previous clients with obtaining appointed appellate counsel after my appointment duties have ended and Mr. Salazar did not express to me that he wanted me to do that in his case.

(ECF No. 17-19 at 116.) Upon review, the state habeas court made the following findings of fact:

> 58. The record demonstrates that Erin Shinn represented Applicant up until July 25, 2018, the date she filed and presented the motion for new trial on his behalf that was denied.

> 59. Subsequent to the denial of that motion, Erin Shinn was permitted to withdraw from the case.

> 60. Applicant had no right to appeal any issue without this Court's consent, pursuant to his waiver of appeal at the time of his plea.

> 61. "The Rules of Appellate Procedure are clear that in a plea-bargained case an appellant may appeal only "those matters that were raised by written motion filed and ruled on before trial," or "after getting the trial court's permission to appeal." TEX. R. APP. P. 25.2(a)(2). There is no exception for the trial court's refusal to grant permission to appeal. There is no exception for an adverse ruling on a motion

for new trial. There is no exception for the voluntariness of waivers." *Estrada v. State,* 149 S.W.3d 280, 282 (Tex. App.-Houston [1st Dist.] 2004).

62. Applicant did not express any desire to appeal any issues regarding his plea or the denial of the motion for new trial to Erin Shinn.

63. Erin Shinn has experience assisting clients with obtaining appointed appellate counsel, and would have fulfilled that request of Applicant if he had expressed any interest in obtaining the Court's permission to file an appeal.

64. Applicant has failed to prove that Erin Shinn abandoned him or provided inaccurate advice regarding his right to appeal during the time of her representation.

(*Id.* at 230-31.)

In Petitioner's reply to the State's response to his federal petition, he argues he asked for counsel to file "whatever it took to appeal his conviction and counsel erroneously advised that by taking a plea bargain that [P]etitioner had waived all appealable rights and that included the denial of my motion for new trial." (ECF No. 25 at 19.)

"[A] lawyer who disregards specific instruction from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Further, even in the context of a guilty plea and appeal waiver, when an attorney "perform[s] deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.'" *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484).   Under the AEDPA, state-court factual findings are "presumed to be correct" unless the habeas petitioner rebuts the presumption through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller,* 200 F.3d at 281. The state habeas court credited Ms. Shinn's statement that Petitioner never told her he wanted to file an appeal. Petitioner's allegations to the contrary are not clear and convincing evidence and therefore insufficient to overcome the

presumption of correctness attributed to the state court's factual findings regarding trial counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim should be denied.

   c.   *Failure to Request Hearing in Motion for a New Trial (claim 5)*

In Petitioner's fourth IAC claim, he argues his trial counsel provided ineffective assistance when she filed a motion for a new trial but failed to file a separate motion for a hearing on the motion for a new trial, and instead included the request in the motion itself. Ms. Shinn responded as follows:

> I filed a Motion for New Trial on July 25 that contained a request for an actual hearing along with an affidavit from Mr. Salazar containing the supporting facts justifying the request for new trial. He and I discussed the merits and grounds for the motion as memorialized in a post-plea letter signed by Mr. Salazar. The Court ruled on my motion based on the contents and supporting affidavit. I subsequently withdrew as counsel and discussed the ruling with Mr. Salazar before sending him a copy.

(ECF No. 17-19 at 116-17.) The state habeas court made the following findings of fact:

> 70. The motion for new trial explicitly states, "The Defendant hereby specifically requests that the Court grant an actual hearing on this Motion . . ."

> 71. Applicant's affidavit begins with a request for a hearing.

> 72. The order form, filed by Applicant's counsel, provided a template to include a hearing date should the Court grant one.

> 73. Erin Shinn stated in her affidavit that she discussed the merits and grounds for the motion with Applicant prior to filing it, and that she discussed the Court's ruling before sending Applicant a copy.

> 74. This Court finds the affidavit of Erin Shinn credible.

> 75. Applicant's claim that his counsel failed to tell him he was entitled to a hearing is without merit; Applicant was not in fact entitled to a hearing on the motion for

new trial, and he was aware of his right to *request* a hearing as evidenced by his own affidavit.

76. Applicant has failed to make any credible showing that his counsel's performance was deficient in the handling of the motion for new trial.

(*Id.* at 233.)

Petitioner's allegation that counsel failed to request a hearing on his motion for a new trial is unsupported by the record and he has failed to provide clear and convincing evidence to rebut the state habeas court's factual findings. As a result, the state habeas court's application of *Strickland* was not unreasonable, and this claim should be denied.

    *d.   Failure to Investigate DNA evidence (claim 6)*

In Petitioner's final IAC claim, he argues trial counsel provided ineffective assistance when they failed to investigate and discover exculpatory DNA evidence as potential mitigating evidence. Petitioner argues counsels' errors prejudiced him by denying him "a fair trial in violation of my due process because I was deprived of my only opportunity to confront the [DNA] evidence that the State relied [on] to support their case and gain a conviction for sexual-assault" as well as denied the opportunity to have the court consider the DNA evidence during sentencing. (ECF No. 1 at 8.)

Ms. Shinn responded to Petitioner's claim as follows:

DNA evidence was collected, analyzed and tendered to both previous counsel and myself during the pendency of Mr. Salazar's case. In addition to my own review of the evidence, a DNA expert was appointed whom I consulted with in an over two hour interview. Mr. Salazar and I discussed the DNA evidence at length in our conversations preparing for trial. Additionally, the DNA evidence was referenced in the trial letter we reviewed before the date of the trial setting. At trial I was prepared to cross-examine the State's DNA evidence with questions my expert assisted me in crafting, however, Mr. Salazar entered into an agreed plea bargain before voir dire was scheduled to begin the day of his trial setting.

(ECF No. 17-19 at 117.) The state habeas court found the following:

16

77. Applicant claims that he was denied effective assistance of counsel, in that his counsel failed to investigate the DNA evidence and potential mitigating evidence regarding the DNA results.

78. Applicant states in his memorandum that "There was no physical evidence linked to [A]pplicant to the State's proof of penetration of the sexual organ of th [sic] victim as alleged in the indictment . . ."

. . . .

81. Applicant has relied on selective portions of the laboratory reports to support his claim.

82. Erin Shinn directly contradicts Applicant's assertion that she failed to investigate the DNA evidence in her affidavit.

83. This Court finds the affidavit of Erin Shinn credible.

84. DNA evidence was collected, analyzed, and the resulting evidence was tendered as discovery to Applicant's previous counsel as well as Erin Shinn.

85. This Court appointed a DNA expert, who consulted with Erin Shinn in an interview that lasted more than two hours.

86. Erin Shinn discussed the DNA evidence at length in preparation for trial.

87. Erin Shinn referred to the DNA evidence in the trial letter reviewed with Applicant prior to the July trial setting.

88. The defensive strategy at trial was going to be to cross-examine the State's DNA evidence with questions that were crafted with the assistance of the defense DNA expert.

89. Applicant's claim that his counsel failed to investigate, or inform him of, the development of the DNA evidence and discover potentially exculpatory evidence is without merit.

(*Id.* at 234-35.)

As previously stated, the Court only reviews the merits of this claim to the extent it can be construed as attacking the voluntariness of Petitioner's guilty plea. The state habeas court found that Ms. Shinn investigated the DNA evidence, reviewed it with Petitioner prior to trial, and

interviewed the court-appointed DNA expert as part of her trial strategy. Despite Petitioner's insistence that the DNA evidence was exculpatory, the state habeas court found he was cherry-picking lab reports and he has failed to rebut this claim with any clear and convincing evidence. He has also failed to show his trial counsel's investigation or understanding of the DNA evidence was in any way deficient. Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim should be denied.

   3.   <u>Trial Court's Denial of Hearing on Motion for New Trial (claim 4)</u>

   Petitioner alleges the trial court abused its discretion when it denied him a hearing on his motion for a new trial, which he moved for due to his allegedly involuntary guilty plea. He argues that, without a hearing, the trial court could not evaluate his mental state when he pleaded guilty, and that a hearing on his motion was "mandatory." (ECF No. 1 at 7.)

   The state habeas court made the following findings of fact and conclusions of law:

   65. Applicant claims he is entitled to habeas relief because the trial court erred in denying his request for a hearing on his motion for new trial, and denying the motion.

   66. Habeas relief is available only for jurisdictional defects and violations of constitutional or fundamental rights; a claim alleging the violation of a statutory rule is not cognizable on habeas corpus. *Ex parte Ramey,* 382 S.W.3d 396, 397 (Tex. Crim. App. 2012)

   67. Applicant's claim the trial court committed error in denying his motion for new trial is not cognizable in an application for habeas relief.

(ECF No. 17-19 at 232.)

   Neither the Supreme Court nor the Fifth Circuit has yet determined whether the right to counsel attaches on a motion for new trial. *See Graves v. Cockrell*, 351 F.3d 143, 155 (5th Cir. 2003); *Mayo v. Cockrell*, 287 F.3d 336, 339-40 & n.3 (5th Cir. 2002) (having counsel during motion for new trial phase may or may not be necessary to preserve defendant's rights to fair trial

and effective appeal). For this reason alone, Petitioner cannot show the state habeas court's denial of this claim was improper. Because the law in this area is not established, Petitioner cannot show the state habeas court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1). Accordingly, this claim should be denied.

    4.  <u>Void Sentence and Judgment (claim 7)</u>

In Petitioner's last claim for relief he argues the trial court imposed an illegal judgment and sentence when the court sentenced him as a habitual offender but failed to make affirmative findings on the enhancement paragraphs from Petitioner's indictment.

The state habeas court found the following:

90. Applicant claims his sentence is void because the judgment fails to indicate an affirmative finding with respect to the enhancement paragraphs.

91. At the time of the plea, Applicant agreed that he was pleading as a habitual offender. *See* Appendix C. [ECF No. 17-19 at 254-59.]

92. Applicant has not challenged the sufficiency or legality of the prior convictions used to enhance this punishment range, nor has he alleged that the Court failed to orally pronounce findings that the enhancement paragraphs were true. Applicant's claim for habeas relief effectively asserts a clerical error.

93. Even if the trial court erred in documenting the plea to the enhancement paragraphs in the final judgment, Applicant must show harm to be entitled to relief. *Ex parte Parrott,* 396 S.W.3d 531 [(Tex. Crim. App. 2013)].

94. Here, the State was in possession of records which would have been admissible to show Applicant had been convicted of burglary of a building, a second degree felony, committed on October 26, 1990, and the conviction made final on March 10, 1992. *See* Appendix A. [ECF No. 17-19 at 239-44.]

95. Further, the State [was] in possession of records which would have been admissible to show Applicant had been convicted of burglary of a building with intent to commit assault, committed on September 6, 2002, and the conviction made final on March 11, 2004. [ECF No. 17-19 at 245-53.]

96. Applicant has failed to demonstrate that the enhancement paragraphs were unlawfully applied to his sentence, or that the judgment imposing a thirty-year sentence is void.

(ECF No. 17-19 at 236-37.)

Under Texas law, a habeas petitioner raising an illegal-sentence claim must demonstrate harm to be entitled to relief. *Ex parte Parrott*, 396 S.W.3d at 534-36. The state habeas court concluded the error on Petitioner's judgment was clerical and cited record evidence supporting Petitioner's two prior felony convictions. Issues of state law are not cognizable on federal habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations of state law questions."); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004) ("[I]n our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law."). Further, Petitioner has failed to provide any clear and convincing evidence that rebut the state habeas court's factual findings regarding his two prior felony convictions or that show the state habeas court's decision was an unreasonable application of clearly established federal law. Accordingly, this claim should be denied.

5. <u>Pending Motions</u>

Petitioner has two pending motions before the Court. The undersigned will analyze them in turn.

In his Motion to Alter or Amend Judgment, Petitioner argues the undersigned erred in denying his February 24, 2021 motion for an evidentiary hearing. He seeks to have this decision reversed and his motion for an evidentiary hearing granted. (ECF No. 27.) Based on the relief he seeks, the undersigned construes this motion as one for an evidentiary hearing.

Habeas petitioners are not entitled to a federal evidentiary hearing to develop new evidence to attack the state court's resolution of their claims. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Under the AEDPA, the proper place for development of the facts supporting a claim is the state court. *See Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding the AEDPA clearly places the burden on a petitioner to raise and litigate as fully as possible his federal claims in state court). When, as in this case, a petitioner's claims have been rejected on the merits by the state courts either on direct appeal or during a state habeas corpus proceeding, further factual development in federal court is effectively precluded. *See Pinholster*, 563 U.S. at 181-88 (2011) (holding an evidentiary hearing is unnecessary when a state court has rejected a claim on the merits and federal habeas review of that rejection is governed by § 2254(d)(1)); *Woodfox v. Cain*, 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance.").

Likewise, where a federal habeas corpus petitioner's claims lack merit on their face, further factual development is not necessitated. *See Register v. Thaler*, 681 F.3d 623, 627-30 (5th Cir. 2012) (recognizing the discretion inherent in district courts to allow factual development, especially when confronted with claims foreclosed by applicable legal authority). "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Richards v. Quarterman*, 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro*, 550 U.S. 465, 468

(2007)). As discussed above, Petitioner's allegations lack merit and further factual development is unwarranted. This motion should be denied.

Petitioner also moves to vacate the referral to the magistrate judge and preside. (ECF No. 29.) Petitioner appears to believe the magistrate judge is exercising jurisdiction pursuant to 28 U.S.C. § 636(c) without Petitioner's consent. This is not the case. The parties have not consented to the magistrate judge's jurisdiction under § 636(c) and, as detailed below, Petitioner is free to file his objections to this Report and Recommendation. This motion should also be denied.

## IV. Recommendation

The undersigned recommends that the District Court **DENY** Petitioner's Petition for Writ of Habeas Corpus and **DENY** Petitioner's pending motions.

## V. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states

22

a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the undersigned recommends the Court not issue a certificate of appealability.

## VI. Objections

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

SIGNED this 28th day of May, 2021.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE